UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 01-1930-CIV-MARTINEZ/Dubé

MIAMI-DADE COUNTY, FLORIDA, a )
political subdivision of the State of Florida, )
     )
        Plaintiff, )
     )
v. )
     )
UNITED STATES OF AMERICA, )
     )
        Defendant. )
     )

## CORRECTED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES BY PLAINTIFF MIAMI-DADE COUNTY, FLORIDA TO STRIKE AND PRECLUDE THE EXPERT REPORT AND PROFFERED TESTIMONY OF WILEY R. WRIGHT, III

Plaintiff, Miami-Dade County, Florida (the "County"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 26 and Rule 26.1.11.2 of the Local Rules, respectfully submits its Motion and Memorandum of Points and Authorities to strike and to preclude the Expert Report of Wiley R. Wright, III, signed May 20, 2003, and to preclude the U.S. from proffering his testimony at trial.

The U.S. designated Mr. Wright as an expert "to determine whether the past and future costs claims by the Plaintiff are sufficiently documented and accurately accounted for under generally accepted accounting principles and practices and the accounting standards of and pursuant to the National Contingency Plan." Exhibit 1 hereto (Expert Report of Wiley R. Wright, III CPA, May 20, 2003).

The National Contingency Plan "is a body of regulations governing the clean up of hazardous waste sites under CERCLA." *Redwing Carriers, Inc. v. Saraland Apartments*, 94

F.3d 1489, 1496 n.8 (11th Cir. 1996).  The National Contingency Plan contains the following general admonition regarding accurate accounting:  "In general, documentation shall be sufficient to provide the source and circumstances of the release . . . the response action taken, [and] accurate accounting of federal state or private party costs incurred for response actions." 40 C.F.R. § 300.160(a)(1) (1990).  To meet this standard, a government (such as the County) must demonstrate only that it incurred costs in responding to a release or threat of release. *Id.*; *United States v. Chapman*, 146 F.3d 1166, 1169 (9th Cir. 1998).  Neither Congress nor the U.S. Environmental Protection Agency require a CERCLA plaintiff -- much less a political subdivision of the State of Florida -- to meet any special or extra-statutory accounting standard to make that simple proof.  *E.g. California v. Neville Chem. Corp.*, 213 F. Supp. 2d 1134, 1138 (C.D. Cal. 2002).

In this action, the County has met this simple threshold and will prove its response costs at trial.  On June 11, 2003, the County produced a complete report on the past response costs the County seeks to allocate to the U.S. in this action.  That report was the subject of a designee deposition of the County on July 1 and 2, 2003.  Mr. Wright attended that deposition.  From July 2, 2003, to date, Mr. Wright has not modified his initial Report to reflect his views, if any, on the County's report of June 11 or the deposition testimony on July 1 and 2, 2003.  However, because Mr. Wright reserves the right to modify his report through trial, the County moves to strike his report and to preclude any testimony he may be moved to give at trial.

The bases for the preclusion are two-fold:

A.      The expert methodology Mr. Wright proffered in May 2003 is outside Rule 704 of the Federal Rules of Evidence.  "A witness may not testify to the legal implications of conduct;"

2

the Court is the only source of law.  *Montgomery v Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).  This is not an instance where the law imposes exacting or arcane standards.  The Court must be merely satisfied that the response costs at issue were incurred in a manner that was substantially, not strictly, consistent with any applicable requirements of the NCP in place at the time of incurrence.  The method of review that the NCP calls for is the legal method -- the same review method the Court makes generally.

      B.     The NCP does not impose any standard of "accurate accounting," much less the principles Mr. Wright offered here.  On April 17, 2003 -- less than a month before Mr. Wright signed his Report in this action -- the U.S. submitted a memorandum of law to the United States District Court for the District of Montana in *U.S. v. W.R. Grace & CO.-Conn., et al.*, Civ. No. 01-72-M-DWM.  Exhibit 2 hereto.  The County incorporates herein that memorandum, *mutatis mutandis*.  That memorandum and Mr. Wright's Report and methodology cannot coexist.

## Conclusion

Mr. Wright's Report of May 20, 2003, should be stricken and Mr. Wright be precluded from testifying in the United States District Court for the District of Montana, on the meaning of "accurate accounting" and the burden of proof associated with this NCP provision.

GREENBERG TRAURIG, P.A.
1221 BRICKELL AVENUE MIAMI, FLORIDA 33131
305-579-0500  FAX 305-579-0717  www.gtlaw.com
MIAMI  NEW YORK  WASHINGTON, D.C.  ATLANTA  PHILADELPHIA  TYSONS CORNER  CHICAGO  BOSTON  PHOENIX  WILMINGTON  LOS ANGELES  DENVER
FORT LAUDERDALE  BOCA RATON  WEST PALM BEACH  ORLANDO  TALLAHASSEE

Respectfully Submitted,

*[signature: Mitchell J Rotbert /Las]*

**ROTBERT LAW GROUP, LLC**
By: Mitchell J. Rotbert
*Pro Hac Vice*
Sabrina Mizrachi
Florida Bar No. 596991
200-A Monroe Street
Suite 110
Rockville, MD 20850
Phone: (301) 217-5907
Fax:    (301) 251-4032
E-mail: mrotbert@rotbertlaw.net
E-mail: smizrachi@rotbertlaw.net

**GREENBERG TRAURIG, P.A.**
Peter M. Gillon
Attorneys for Miami-Dade County
800 Connecticut Ave., N.W.,
Suite 500
Washington, DC  20006
Telephone:  (202) 331-3100
Facsimile:  (202) 331-3101
E-mail:  gillonp@gtlaw.com

**MIAMI-DADE COUNTY ATTORNEY**
Thomas H. Robertson
Mercedes Sandoval Holston
Attorneys for Miami-Dade County
Miami-Dade Center, Suite 2810
Miami, Florida  33128-5151
Telephone:  (305) 375-1669
Facsimile:  (305) 375-5634

**JOYCE, PAUL, CARLSON & McDANIEL, PC**
Robert J. Joyce
*Pro Hac Vice*
Attorneys for Miami-Dade County
111 West Fifth Street, Suite 500
Tulsa, Oklahoma  74103
Telephone:  (918) 599-0700
Facsimile:  (918) 599-0188

4

Case No.. 01-1930-CIV-MARTINEZ/Dubé

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy hereof was furnished by first class U.S. Mail to counsel listed below this _12th_ day of September, 2003.

MARCOS DANIEL JIMINEZ
United States Attorney
BETH D. JARRETT
United States Attorney's Office
99 N.E. 4th Street
Miami, FL 33132

Lewis M. Barr, Esq.
U.S. Department of Justice
Environmental Defense Section
Environmental and Natural Resources Division
P. O. Box 23986
Washington, D.C. 20026-3986

LORI A. SOCHIN

5

THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

JAMES D. FREEMAN
HEIDI KUKIS
DAVID F. ASKMAN
MARK C. ELMER
Trial Attorneys
Environmental Enforcement Section
U.S. Department of Justice
999 Eighteenth Street, Suite 945NT
Denver, Colorado 80202
(303) 312-7376

WILLIAM W. MERCER
United States Attorney
District of Montana

VICTORIA FRANCIS
Assistant United States Attorney
District of Montana
2929 Third Avenue North, Suite 400
Billings, Montana 59101
(406) 657-6101

MATTHEW D. COHN
Enforcement Attorney
U.S. EPA Region 8
999 Eighteenth Street, Suite 300
Denver, Colorado 80202
(303) 312-6853

ATTORNEYS FOR PLAINTIFF
United States of America

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     vs.<br><br>W.R. GRACE & CO. - CONN. and<br>KOOTENAI DEVELOPMENT<br>CORPORATION,<br><br>          Defendants. | Civ. No. 01-72-M-DWM<br><br>**UNITED STATES' BRIEF ON THE<br>MEANING OF "ACCURATE<br>ACCOUNTING"** |

1    In this action, the United States seeks to recover the costs it incurred responding to the

2    release or threatened release of asbestos at the Libby Asbestos Site pursuant to Section 107(a)

3    the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42

4    U.S.C. § 9607(a). These costs are recoverable either as response costs under Section

5    107(a)(4)(A) of CERCLA or as costs of health assessments or health effects studies under

6    Section 107(a)(4)(D). While Defendants have conceded the adequacy of documentation for a

7    significant portion of the Government's costs,[1] they contend that the documentation supporting

8    the Agency for Toxic Substances and Disease Registry's ("ATSDR") health-related response

9    costs related to the Site is insufficient to constitute an "accurate accounting" within the meaning

10   of the National Contingency Plan ("NCP"). The Court has directed the parties to file briefs that

11   discuss the meaning of the term "accurate accounting" and the burden of proof associated with

12   this NCP provision.

### ARGUMENT

**I.    DEFENDANTS BEAR THE BURDEN OF PROVING ANY ALLEGED INCONSISTENCY WITH THE NCP.**

16   To establish a *prima facie* case to recover response costs under Section 107(a) of

17   CERCLA, the United States must prove: (1) the site is a facility; (2) a release or threatened

18   release of a hazardous substance occurred; (3) the government incurred costs in responding to

19   the release or threatened release; and (4) the defendant is a liable party. 42 U.S.C. § 9607(a);

20   *United States v. Chapman*, 146 F.3d 1166, 1169 (9th Cir. 1998). Once the United States

21   establishes its *prima facie* case, the burden shifts to the defendant to prove the response action

_____

23   [1]Two of Defendants' contentions at trial do not appear to based on the adequacy of cost
documentation. First, Defendants contend that $266,538 paid to Aeolus, Inc. (via an interagency
24   agreement between EPA the Volpe National Transportation Systems Center) should have been
billed to a non-site specific account rather than the Libby Asbestos Site project. Second,
25   Defendants contend that a majority of EPA's indirect cost claim of $11,359,363.67 is not
"accurately accounted for" due to a disagreement with EPA's revised methodology for
26   calculating indirect costs. As Defendants' arguments regarding Aeolus, Inc. costs and EPA
indirect costs do not appear to implicate the actual documentation of these costs, they are not
27   addressed in this brief. These arguments are addressed in the United States' Proposed Findings
of Fact and Conclusions of Law.

1

1   was inconsistent with the NCP. *Chapman*, 146 F.3d at 1169; *Washington State Dep't of Transp.*

2   *v. Washington Natural Gas Co.*, 59 F.3d 793, 800 (9th Cir. 1995). To the extent a CERCLA

3   defendant claims the United States cannot recover its costs because of an inconsistency with the

4   NCP, the defendant – not the United States – has the burden of proving the inconsistency and the

5   amount of additional costs that were incurred as a result of the inconsistency. *See United States*

6   *v. Findett Corp.*, 220 F.3d 842, 849 (8th Cir. 2000); *United States v. Burlington N. R.R. Co.*, 200

7   F.3d 679, 695 (10th Cir. 1999) (defendant must prove inconsistency with NCP led to

8   "demonstrable excess costs"); *Chapman*, 146 F.3d at 1170-71; *California v. Neville Chem.*

9   *Corp.*, 213 F. Supp. 2d 1134, 1138-41 (C.D. Cal. 2002). As a result, a CERCLA defendant

10   cannot challenge the adequacy of the government's cost documentation by raising "vague

11   challenges to the validity of those costs based on the government's evidence" but instead must

12   offer "evidence to counter or otherwise challenge the extensive government documentation of its

13   direct costs." *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1508 (6th Cir. 1989).

14        In this case, the Court has already determined that the United States has established a

15   *prima facie* case against Defendants and that EPA's substantive cleanup actions in Libby were

16   not inconsistent with the NCP. *See* December 19, 2002 Order at 14-15. However, the

17   sufficiency of the government's documentation of ATSDR's costs remains to be decided.

18   **II.    COURTS HAVE HELD A BROAD RANGE OF COST DOCUMENTS**
19          **SUFFICIENT TO ESTABLISH A PRIMA FACIE CASE.**

20        The NCP contains a general admonition to complete and maintain documentation to

    support cost recovery actions:

21

22   > During all phases of response, the lead agency shall complete and maintain
> documentation to support all actions taken under the NCP and to form the basis
> for cost recovery. *In general*, documentation shall be sufficient to provide the
23   > source and circumstances of the release, the identity of responsible parties, the
> response action taken, accurate accounting of federal state or private party costs
24   > incurred for response actions, and impacts and potential impacts to the public
> health and welfare and the environment.

25

26   40 C.F.R. § 300.160(a)(1) (1990) (emphasis added).[2] Defendants have not and cannot prove an

27   _____

[2]This provision of the 1990 version of the NCP is almost identical to a provision of the 1985
28   NCP codified at 40 C.F.R. § 300.69 (1985). *Chapman*, 146 F.3d at 1171 n.4. Although the 1990
provision of the NCP is applicable to this case, some of the case law cited in this brief applied

1    inconsistency with this general admonition, as the provision does not establish prescriptive

2    standards for the content of cost documents. In fact, courts have held that by its nature the NCP

3    governs the selection of response actions, not the incurrence of costs *per se*, so that a cost can be

4    "inconsistent with the NCP" only if the response action for which the cost was incurred was

5    inconsistent with the NCP. *See, e.g., United States v. Hardage*, 982 F.2d 1436, 1443 (10th Cir.

6    1992); *United States v. Kramer*, 913 F. Supp. 848, 862 (D.N.J. 1995). This interpretation makes

7    clear that 40 C.F.R. § 300.160 imposes no additional documentation requirements beyond what

8    is sufficient to persuade the court that the costs have been proven by a preponderance of the

9    evidence. Indeed, those courts that have specifically examined this provision of the NCP have

10   recognized that it "does not contain any specific standards concerning the documentation of

11   costs." *United States v. Chrysler Corp.*, 168 F. Supp. 2d 754, 769 (N.D. Ohio 2001); *United*

12   *States v. Findett Corp.*, 75 F. Supp. 2d 982, 991 (E.D. Mo. 1999), *aff'd*, 220 F.3d 842 (8th Cir.

13   2000). The NCP only requires that "in general" documentation be sufficient to provide an

14   accurate accounting of costs incurred. Notably, the NCP does not define "accurate accounting"

15   or otherwise elaborate on what is meant by "sufficient." *Neville*, 213 F. Supp. 2d at 1138;

16   *Chrysler*, 168 F. Supp. 2d at 769; *Findett*, 75 F. Supp. 2d at 991.

17           In the absence of regulatory[3/] guidance on the meaning of "accurate accounting," courts –

18   including the Ninth Circuit – have assessed the adequacy of cost documentation supporting a

19   CERCLA cost recovery claim under general civil evidentiary standards, rather than imposing

20   some additional NCP-based burden. In *Chapman*, for example, the Ninth Circuit affirmed a

21   grant of summary judgment for the United States in a CERCLA case. Among other things, the

22   Court – after quoting a portion of 40 C.F.R. § 300.160(a)(1) – found that no genuine issue of

23   material fact existed as to whether EPA had "adequately documented" the costs it had incurred.

---

25   the 1985 version of the NCP.

26   [3/]CERCLA itself does not establish any cost documentation standards outside those present in the
27   NCP. Specifically, CERCLA provides that responsible parties are liable for "all costs of
     removal or remedial action incurred by the United States Government . . . not inconsistent with
28   the national contingency plan" and "the costs of any health assessment or health effects study
     carried out under [42 U.S.C. 9604(i)]." 42 U.S.C. § 9607(a)(4).

3

| | |
|---|---|
| 1 | *Chapman*, 146 F.3d at 1171. The Court specifically referenced the "detailed cost summaries" |
| 2 | the government had submitted, the "extensive documentation of costs in the form of time sheets |
| 3 | and payroll documents" and "declarations from EPA staff, attorneys, accountants, and |
| 4 | supervisors attesting to the work they performed and the time spent on the Chapman site." *Id.* |
| 5 | This same approach has been applied in other Circuits. In *Findett*, the Eighth Circuit |
| 6 | upheld a grant of summary judgment on CERCLA response costs, finding "detailed cost |
| 7 | summaries, supporting data, and other competent evidence" were sufficient to support the |
| 8 | government's cost claim. *Findett*, 220 F.3d at 849.[4] Similarly, the Tenth Circuit has upheld a |
| 9 | grant of summary judgment on CERCLA response costs where the costs were documented by |
| 10 | affidavits of government employees responsible for maintaining cost data supported by |
| 11 | "summaries of cost data." *Hardage*, 982 F.2d at 1442-43. *See also United States v. Chromalloy* |
| 12 | *Am. Corp.*, 158 F.3d 345, 352 (5th Cir. 1998) (concluding that "detailed cost summaries" |
| 13 | provided an adequate basis to find EPA's oversight costs reasonable and necessary). |
| 14 | Numerous district courts have taken the same approach to assessing the adequacy of |
| 15 | CERCLA cost documentation. *See, e.g., Neville*, 213 F. Supp. 2d at 1138-41 (time sheets |
| 16 | sufficient to document payroll costs; travel expense reports and related documentation sufficient |
| 17 | to document travel costs; contractor invoices sufficient to document contract costs); *Chrysler*, |
| 18 | 168 F. Supp. 2d at 769, 774 (contractor vouchers/invoices, invoice approval forms, and Treasury |
| 19 | |

---

| | |
|---|---|
| 20 | [4]The Eighth Circuit did not elaborate on what constitutes "detailed cost summaries, supporting |
| 21 | data, and other competent evidence." However, the opinion below has an extensive discussion of the evidence upon which it based its summary judgment ruling. The district court relied upon |
| 22 | three types of cost summaries – payroll cost reports (which "include the names of employees who did Site-related work, the year and the pay period in which they did that work, the hours |
| 23 | that they worked, and the corresponding payroll amounts"); travel cost summaries (listing the |
| 24 | "employee who traveled, the travel voucher number, the cost of the travel, and the Treasury schedule confirming payment of that cost"); and contract summaries ("listing the contractor, |
| 25 | contract number, and total costs" and including the "voucher and Treasury schedule numbers supporting those costs and confirming payment thereof"). *Findett*, 75 F. Supp. 2d at 991. In |
| 26 | addition, the district court relied upon affidavits from government personnel who monitored the |
| 27 | performance of cleanup contractors describing contract oversight. *Id.* The district court noted that the United States had produced additional cost documentation to defendants (including |
| 28 | certain site specific invoices, invoice approval forms, Treasury schedules, and monthly progress reports) but did not find these documents necessary to prove response costs. *See id.* at 992. |

1   schedules adequately document contractor costs); *United States v. Bell Petroleum Servs., Inc.*,

2   734 F. Supp. 771, 781 (W.D. Tex. 1990), *rev'd in part, vacated in part on other grounds*, 3 F.3d

3   889 (5th Cir. 1993); *United States v. Northernaire Plating Co.*, 685 F. Supp. 1410, 1415 (W.D.

4   Mich. 1988), *aff'd sub nom., United States v. R.W. Meyer, Inc.*, 889 F.2d 1497 (6th Cir. 1989).

5          Notably, none of the cases reviewed above required the presence of any particular

6   document or type of document in their analysis of response cost documentation. They merely

7   required that the documentation be "adequate" or "sufficient" to support the cost claim. *See,*

8   *e.g., Chrysler*, 168 F. Supp. 2d at 769 ("The Court has reviewed these documents [contractor

9   invoices, invoice acceptance forms, and EPA Treasury schedules] and concludes that the

10   documentation provided is adequate to support the contractor costs . . . that the EPA incurred.").

11   Some courts have found documents that itemize specific expenditures or activities (*e.g.*, time

12   sheets, invoices, Treasury schedules) sufficient to document CERCLA response costs. *See, e.g.,*

13   *Neville*, 213 F. Supp. 2d at 1138-41; *Chrysler*, 168 F. Supp. 2d at 769, 774. Other courts have

14   found acceptable detailed cost reports that summarize this type of documentation. *See, e.g.,*

15   *Findett*, 75 F. Supp. 2d at 991. Still others have relied upon both cost summaries *and* the

16   underlying cost documents. *See, e.g., Chapman*, 146 F.3d at 1171. Moreover, many courts have

17   assessed documents in the context of sworn statements government officials provided on such

18   topics as work performed at the site, the time it took to accomplish cleanup tasks, and contractor

19   oversight. *See, e.g., Chapman*, 146 F.3d at 1171; *Hardage*, 982 F.2d at 1442-43; *Findett*, 75 F.

20   Supp. 2d at 991. In sum, the plaintiff in a CERCLA cost recovery action (typically, but not

21   always a state or federal governmental entity) has a range of options for proving up the amount

22   of costs it has incurred. The nature of the documentation presented to support the cost claim

23   inevitably will vary depending on the amount of response costs at issue, the type of

24   documentation the plaintiff's accounting system maintains, and the extent and complexity of that

25   documentation.[9] Regardless of the option taken, the burden is on the CERCLA defendant to

26

27   [9]While the courts have determined that documents such as cost summaries, time sheets, invoice

28   approval forms, and Treasury schedules are sufficient to support a cost claim, they do not state
     that these particular documents are necessary. In any given case, other evidence might suffice.

1  demonstrate that such documentation is inadequate once the *prima facie* case for the costs has

2  been established.

3    Similarly, there is no specific standard regarding the amount of detail that must be

4  included in cost documentation.  Courts have rejected arguments that the lack of descriptive

5  information on a time sheet or travel voucher regarding the underlying task the employee

6  performed invalidates the documentation.  *See Neville*, 213 F. Supp. 2d at 1138-40; *Bell*

7  *Petroleum*, 734 F. Supp. at 781 ("failure to provide descriptive documentation does not make the

8  Government's accounting inaccurate[;] even if it did, disallowance of costs for that reason is too

9  harsh a sanction for the omission, if any, involved").

10  **III.   THE UNITED STATES' EVIDENCE SATISFIES THE PREPONDERANCE OF THE EVIDENCE STANDARD AND DEFENDANTS HAVE SHOWN NO**

11  **INCONSISTENCY WITH NCP COST DOCUMENTATION PROVISION.**

12    At trial, the United States presented ATSDR's cost recovery package, which consists of

13  thousands of pages of documentation of the costs ATSDR incurred in conducting health-related

14  activities in Libby.  This documentation included cost summaries, time sheets, contractor

15  invoices, travel vouchers and voluminous other information.  *See generally* Exhibit 1145.  In

16  addition, the United States elicited testimony from two senior ATSDR employees – the Deputy

17  Director of the Division of Health Studies, who acted as project officer and field coordinator at

18  the Libby Site and the Cost Recovery Team Leader, who was responsible for preparing

19  ATSDR's cost recovery package – to explain ATSDR's Libby activities, the agency's

20  institutional procedures for approving and paying costs, and the preparation of the cost recovery

21  package for the Libby Asbestos Site.  This is exactly the type of evidence that courts have found

22  adequate to document response costs.  *See, e.g., Chapman*, 146 F.3d at 1171; *Findett*, 220 F.3d at

23  849; *Hardage*, 982 F.2d at 1442-43.  Indeed, as the *Findett* district court noted in concluding that

24

25  As different government agencies – and for that matter different private entities – utilize
   different accounting systems and procedures, the cost accounting documentation they create and

26  retain may take on different forms and capture different information.  Moreover, the type and
   form of information retained may change over time as, for example, previously paper

27  transactions are conducted electronically.  Such differences should not impair the ability to

28  recover costs, provided the documentation is adequate to support the costs by a preponderance of
   the evidence.

1    the government's documentation was sufficient, "the type of detailed cost summaries submitted

2    by the government here have routinely been found adequate to support its cost claims in other

3    cases." *Findett*, 75 F. Supp. 2d at 992. As discussed in more detail in the United States'

4    Proposed Findings of Fact and Conclusions of Law, the documentation the United States has

5    provided to support ATSDR's costs in this case is the same type of documentation that courts

6    have routinely found sufficient to support other CERCLA cost claims.

7
8    **IV.    DEFENDANTS' INTERPRETATION OF CERCLA'S DOCUMENTATION
         PROVISION HAS NOT BEEN ACCEPTED BY THE COURTS.**

9        Defendants contend, through their expert cost accountant Dale Jensen, that the NCP's

10   cost documentation provision implicitly incorporates "commonly accepted accounting standards

11   and procedures applicable to documenting costs." Tr. at 442:21-444:3. These "commonly

12   accepted accounting standards" – in Mr. Jensen's view – require the government to compile and

13   maintain a long list of documents for its expenditures, including:  1) invoice summaries; 2)

14   site-specific invoices which indicate costs by cost type or by activity; 3) invoice approval forms,

15   or other documentation of approval, signed by the Site's project manager or other responsible

16   site-specific employee; 4) proof of payment of invoices; contracts, work assignments, or IAGs,

17   authorizing costs to be incurred and describing the work to be performed; 5) monthly progress

18   reports containing descriptions of tasks performed, types and amounts of costs incurred, and

19   other summary information to show that costs were incurred in connection with the Site; 6) audit

20   reports of costs incurred under contracts and IAGs; and, 7) all of the above items for significant

21   subcontractor costs.[9]  Tr. at 520:21-523:4.

22       Defendants' argument fails for two reasons. First, while "commonly accepted accounting

23   standards" may exist for some purposes, they do not establish documentation requirements of

24   general applicability. Mr. Jensen can point to no authority in accounting literature articulating

25   the extensive documentation requirements that he advocates. *See* Tr. at 523:8-525:16. His

26

27   _____

28   [9]Defendants summarize this list – in an apparent effort to make it appear more reasonable – into
     four "categories":  documents showing work is authorized, incurred, approved, and paid. *See* Tr.
     at 443:22-447:20.

1    laundry list of required document categories is, quite simply, a list he invented for his expert

2    testimony in CERCLA cost-recovery litigation. Second, even assuming such "commonly

3    accepted accounting standards" existed, there is no suggestion in either CERCLA or the NCP

4    that they apply to the documentation of CERCLA costs as a precondition to cost recovery.

5    Indeed, courts have consistently rejected arguments that so-called general accounting standards

6    are germane to the assessment of the adequacy of cost documentation under the NCP.[7]

7         For example, in *Findett* the Eighth Circuit reviewed *de novo* the district court's ruling

8    that the United States was entitled to summary judgment on its response costs in the amount of

9    $3.2 million dollars. In *Findett*, Mr. Jensen again contended that the government's CERCLA

10   cost documentation was not sufficient to meet the NCP requirement. The Eighth Circuit

11   affirmed the lower court's rejection of Mr. Jensen's argument, stating:

12   > The EPA submitted thoroughly detailed cost summaries, supporting data, and
13   > other competent evidence to support its claim for recovery of response costs.
14   > Findett's expert Dale Jensen in his report suggested that additional documentation
     > the EPA had not submitted was necessary to substantiate the EPA's response
14   > costs. We disagree. Either the missing documentation noted in Jensen's report
     > was in fact provided by the EPA to Findett, or the detail sought (for example,
15   > progress reports from contractors, audit reports of contracts) was only
     > peripherally related to whether the EPA actually incurred response costs. . . . *In*
16   > *sum, Jensen's opinions regarding insufficient documentation do not create any*
     > *genuine issue of material fact as to the costs the government seeks to recover*
17   > *from Findett.*

18   *Findett*, 220 F.3d at 849 (emphasis added). Similarly, in *Hardage* the Tenth Circuit rejected Mr.

19   Jensen's[8] cost documentation argument, stating that "[t]he expert witness affidavits at issue

20   amount to no more than a denial that the government's documentation establishes a prima facie

21   case that it is entitled to recover $5,441,201.25 in response costs . . . [and therefore] fail to

22   establish a genuine issue for trial." *Hardage*, 982 F.2d at 1444.

23   

24   [7]While the cases cited below address EPA's cost documentation system rather than ATSDR's,
25   the types of documentation the agencies maintain are similar. Courts have applied the same
     general documentation principles regardless of the agency seeking its CERCLA response costs.
26   *See, e.g., Neville*, 213 F. Supp. 2d at 1138-41 (State of California costs); *Chrysler*, 168 F. Supp.
27   2d at 773, 776 (Bureau of Reclamation and Department of Justice costs).

28   [8]Mr. Jensen analyzed the governments' cost documentation in *Hardage*, but one of his
     colleagues provided the trial testimony. Tr. at 526:18-527:13.

1    The District Court for the Eastern District of California also recently addressed Mr.

2    Jensen's documentation arguments. The court, in reviewing $7,809,683.46 in response costs the

3    United States had incurred at a CERCLA cleanup, was direct and harsh with regard to the value

4    of Mr. Jensen's[9] interpretation of the NCP's documentation requirements:

> The Railroads made a wholesale attack on EPA's cost and allocation methodology,
> ignoring well-established legal precedent that has validated EPA CERCLA cost
> documentation procedures and practices. The Railroads' cost recovery expert witness
> was neither credible nor persuasive. He attempted to apply general cost accounting
> principles in a manner that was not helpful and resulted in unnecessary expenditure of
> time.

9    *United States v. Atchison, Topeka & Santa Fe Ry. Co.*, Consolidated Arvin Cases: No. CV-F-92-

10   5068 (OWW), No. CV-F-96-6226 (OWW), No. CV-F-96-6228 (OWW) (E.D. Cal. May 24,

11   2002) at 80. In *Atchison*, as in the case at hand, Mr. Jensen advocated the use of alleged general

12   theories of cost accounting when assessing the adequacy of CERCLA cost documentation. The

13   court soundly rejected all of these arguments and ruled that the United States was entitled to

14   summary judgment on its response costs. The court stated:

> The Railroads' accounting attack was premised on general theories of cost accounting,
> not environmental accounting as described in case law. *The attacks ignored well
> established decisional precedent that validates EPA's CERCLA cost accounting
> procedures and protocols.* The Railroads' accountant also ignored or refused to
> acknowledge the EPA's SCORES and CERCLA Superfund site accounting and cost
> documentation methods. The entirety of Railroads' claims on EPA's accounting
> methodology are rejected.

19   *Id.* at 152-53 (emphasis added).

20   Finally, Mr. Jensen's proposed documentation standard rejects any role for sworn

21   testimony from government officials regarding work performed at a site, the time it took to

22   accomplish this work, and contractor oversight, and related topics. *See* Tr. at 441:6-17. While

23   no court has expressly addressed this aspect of his opinion, it is clearly out of step with

24   CERCLA case law. As noted above, several courts – including the Ninth Circuit in *Chapman* –

25   have considered and relied upon sworn statements by cleanup personnel in assessing the

26   adequacy of cost documentation. *See, e.g., Chapman*, 146 F.3d at 1171; *Hardage*, 982 F.2d at

27   ─────────────────────

28   [9]Mr. Jensen was Defendant Railroads' cost expert in the *Atchison* case. *See* Tr. at 527:14-17.

1   1442-43; *Findett*, 75 F. Supp. 2d at 991. This makes good sense. In certain circumstances,

2   contract approvals, work authorizations, progress reports may be provided in face-to-face

3   meetings or over the telephone. This is particularly likely when the supervising official has

4   direct, on-site knowledge of the work conducted. Accordingly, the trial testimony senior

5   ATSDR officials provided regarding the preparation of ATSDR's cost recovery package and

6   ATSDR's institutional procedures for approving and paying extramural expenses is an

7   acceptable component of the United States' proof on the sufficiency of the ATSDR

8   documentation.

9

10  **V.      DEFENDANTS DO NOT CONTEND THAT THE UNITED STATES
         CALCULATED ATSDR COSTS INCORRECTLY.**

11          As discussed above, Defendants' contention that the ATSDR costs are insufficiently

12  documented is untrue as a factual matter and relies upon an interpretation of the NCP that has

13  been rejected by every court that has considered it. Nevertheless, Defendants *could* still contend

14  that the United States' *calculation* (as opposed to the documentation) of its costs is incorrect.

15  *See, e.g., Chrysler*, 168 F. Supp. 2d at 769 (reviewing the "accuracy" of CERCLA costs claimed

16  after determining documentation adequate to support such costs); *Bell Petroleum*, 734 F. Supp.

17  at 781 (rejecting defendant's contention that CERCLA accounting documentation was

18  inadequate, but indicating that defendant could still put on evidence regarding the "flaws in the

19  figuring" of the amount of response costs owed). In this case, however, Defendants have not

20  presented evidence of alleged flaws in the calculation of ATSDR costs the United States seeks.

21  Dated: April 17, 2003                    Respectfully submitted,

22

23                                           /s/ James D. Freeman
                                             JAMES D. FREEMAN
24                                           HEIDI KUKIS
                                             DAVID F. ASKMAN
25                                           MARK C. ELMER
                                             Trial Attorneys
26                                           Environmental Enforcement Section
                                             U.S. Department of Justice
27                                           999 Eighteenth Street, Suite 945NT
                                             Denver, Colorado 80202
28                                           (303) 312-7376

                                             10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 01-1930-Civ-Martinez/Dubé

MIAMI-DADE COUNTY, FLORIDA, a )
Political subdivision of the State of Florida, )
)
)
)
Plaintiff. )
)
vs. )
)
UNITED STATES OF AMERICA, )
)
)
)
Defendant. )
)

## EXPERT REPORT OF WILEY R. WRIGHT, III CPA

_____
WILEY R. WRIGHT, III CPA

May 20, 2003
_____
Dated

**Miami-Dade County, Florida,**
v.
**United States of America**
**Expert Report of Wiley R. Wright, III CPA**
**Miami International Airport**

## Executive Summary

Rubino & McGeehin was retained by the United States Department of Justice to assist in the evaluation of costs that were allegedly incurred in connection with environmental investigation and cleanup activities by the Plaintiff in connection with the Miami International Airport (MIA or the Site). My scope of services consisted of the: (1) reviewing the Opinions of Costs prepared by Law Engineering; (2) reviewing other documentation submitted in support of the claims stated in the May 2001 Complaint; and (3) preparation of this initial expert witness report.

We have applied the procedures discussed herein to the accounting records and other relevant documents provided by the United States and the Plaintiff in connection with the investigation and cleanup activities at the Site. These procedures were performed in order to determine whether the past and future cost claims by the Plaintiff are sufficiently documented and accurately accounted for under generally accepted accounting principles and practices and the accounting standards of and pursuant to the National Contingency Plan (NCP).

I am the partner/shareholder of Rubino & McGeehin responsible for these services and have personally rendered or reviewed the procedures performed by the members of our staff with respect to them. My hourly rate for the services discussed herein is $190.00 per hour. A copy of my resume can be found as Attachment A.

### Initial Statement of Conclusions/Opinions

I have reviewed the limited supporting documentation[1] provided to date in connection with Plaintiff's claimed costs and have reached the following initial conclusions:

### Conclusion 1:

The documentation provided in support of the claims by the Plaintiff is insufficient to determine whether the claims are accurately accounted for.

### Conclusion 2:

The documentation provided in support of the claims by the Plaintiff is insufficient to determine whether the claims are consistent with the National Contingency Plan.

---

[1] The referenced here to limited supporting documentation provided to date does not include the documents that are warehoused at the document repository at the Miami Dade Airport. Those documents consist of thousands of boxes, with millions of pages, covering in excess of sixty years of airport activities. Based on my preliminary review of the document repository records, the documents are not organized or segregated in any logical fashion similar to what parties submit as "proof of costs" or otherwise provide in support of cost claims. As an example, for EPA cost recovery claims, the government submits summary and detail level cost summaries supported by the underlying cost documentation organized by cost claim component.

**Conclusion 3**

Plaintiff has not provided sufficient documentation to determine, under the accounting standards of the NCP and generally accepted accounting principles and practices, the amount and nature of MIA or Well Field past costs, fees or expenses incurred and paid which Plaintiff seeks to recover in whole or in part from the United States in this litigation. Plaintiff has not provided sufficient information to determine the adequacy under the NCP of the documents which evidence (a) the incurrence and nature of any such costs, fees or expenses; (b) the person to whom such costs, fees or expenses were paid; (c) the work performed by the person to whom such costs, fees, or expenses were paid; and (d) when such costs, fess, or expenses were incurred or paid.

**Conclusion 4**

Plaintiff has not provided sufficient information to determine the adequacy and accuracy, under the accounting standards of the NCP and generally accepted accounting principles and practices, of any cost estimates for any future MIA or Well Field Remedial Investigation or Feasibility Study, future response or cleanup action selection, or any future MIA or Well Field response or cleanup action as to which Plaintiff seeks to recover the costs, fees or expenses in whole or in part from the United States in this litigation. Plaintiff has not provided sufficient information to determine, under the NCP and generally accepted accounting principles and practices, the basis and reasons for the Plaintiff's estimates or projections of any such future costs, fees, or expenses; and the methods, analyses, procedures, assumptions, and references used or made in making such cost, fee or expense estimates or projections.

## Conclusion 5

Plaintiff has not provided sufficient information to determine, under the accounting standards of the NCP and generally accepted accounting principles and practices, the amount and nature of all monies, property or other consideration received by or due to Plaintiff as reimbursement for, or initial funding of, the cost of any response actions – or of any action to contain, remove, remedy or clean up petroleum substances or wastes – at, on or under the MIA or Well Fields from (a) users or tenants of the Airport; (b) insurance recoveries or settlements; (c) EPA; (d) the Civil Aeronautics Administration, the Federal Aviation Administration, or any other related federal agency; (e) the State Inland Protection Trust, Abandoned Tank Restoration Program or other Florida funds; or (f) settlements with alleged potentially responsible parties.

## Conclusion 6

Plaintiff has not provided sufficient information to determine the adequacy and accuracy, under the accounting standards of the NCP and generally accepted accounting principles and practices, of its accounting documents, systems and controls to exclude from its claims in this case attorney's fees and litigation costs, MIA redevelopment and capital expansion costs, response or cleanup costs incurred at other Dade County airports or other facilities, costs for actions covered by the CERCLA petroleum exclusion, or costs for MIA asbestos removal or abatement activities.

**Conclusion 7**

Plaintiff has not provided sufficient information to determine, under the accounting standards of the NCP and generally accepted accounting principles and practices, the extent, if any, to which actions or decisions of current or former employees or contractors of Plaintiff and other persons who been convicted or have pleaded guilty to allegations of bribery, fraud, or other criminal acts increased the costs of any response actions for MIA or the Well Fields by or on behalf of Dade, or of any actions to contain, remove, remedy or clean up petroleum substances or wastes at, on or under MIA or the Well Fields by or on behalf of Dade, including but not limited to proposals, orders, actions, contracts, payments or decisions of or by Ricardo "Richard" Mendez.

**Basis for Conclusions/Opinions**

The claims submitted by Miami Dade include the following types or categories of costs: contractor service costs; personnel or payroll costs, including labor and benefits; travel costs; and administrative or indirect costs.

In order to review, evaluate and otherwise make the determinations discussed above for each category of costs, the following accounting records and documents would be necessary: financial statements; general ledgers or equivalent reports summarizing

costs by fiscal year or respective accounting period and by activity; subsidiary reports[2];

payroll/salary/labor cost documents[3]; travel cost documents[4]; contract service costs[5]; and

administrative or indirect cost documents[6]

      These documents are consistent with the types of documents that are necessary to

evaluate costs under generally accepted auditing standards and practices, government

auditing standards and practices, and consulting service standards and practices.

Furthermore, these types of documents are those types typically provided by contractors

in support of construction claims as well as those necessary to support a claim against the

Superfund for Mixed Funding claims.

      The NCP requires that a party seeking cost recovery provide complete and

accurate documentation to support its environmental cost recovery claims:

---

[2] Subsidiary reports including but not limited to: payroll registers; labor distribution reports; accounts payable reports; cash disbursement journals; cash receipts journals and budgetary reports.

[3] Payroll/salary/labor documents including but not limited to; payroll registers; personnel action forms/records, establishing authorized salaries or rates of pay and benefits; employee timesheets, timecards and or time and attendance reports; and canceled checks.

[4] Travel cost documents including but not limited to: travel vouchers; travel authorizations; supporting receipts, such as airline tickets and hotel receipts; and cancelled checks.

[5] Contract service cost documents include but are not limited to: contracts; amendments, modifications and or change orders including all supporting documentation; work plans; statements of work; service orders; PSA's; payment applications and related detailed support; invoices or vouchers; certified payroll reports; audit reports; subcontractor agreements, change orders, invoices correspondence and other related documents; status reports – both technical and financial; close-out reports at the contract and service order level; daily reports; field notes, including project manager diaries and or logs; manifests; correspondence; deliverables, including interim and final reports; and cancelled checks.

[6] Administrative or indirect cost documents include but are not limited to audit reports, both internal and outside auditor reports; annual calculations and supporting worksheets/workpapers; and internal memorandums concerning any administrative or indirect cost claimed.

"During all phases of response, the lead agency shall complete and maintain documentation to support all actions taken under the NCP and to form the basis for cost recovery. In general, documentation shall be sufficient to provide the source and circumstances of the release, the identity of responsible parties, the response action taken, accurate accounting of federal, state or private party costs incurred for response actions, and impacts and potential impacts to the public health and welfare and the environment."[7]

The Plaintiff's Guide to Compliance with the National Contingency Plan at Miami International Airport [8], EPA Directive 2550-D[9] and the EPA Superfund Procedures Manual[10], identify the types of supporting documentation for transactions that parties seek recovery for in cost recovery claims. These documents are guidance documents and do not themselves establish requirements on parties seeking reimbursement. However, they do identify the types and extent of documentation necessary to allow the proper and complete evaluation of the accuracy and consistency of the accounting for cleanup costs under the National Contingency Plan. These standards and guidance documents should be considered in addition to generally accepted accounting standards and practices in evaluating Plaintiff's cost claims in this litigation.

---

[7] 40 C.F.R. § 300.160(a)(1)(2000).
[8] Guide to Compliance with the National Contingency Plan at Miami International Airport, Prepared by Compliance Manual Subcommittee, Environmental Cleanup and Cost Recovery Program, Miami-Dade Aviation Department.
[9] Financial Management of the Superfund Program, Resources Management Directives System 2550D, June 25, 1988.
[10] Superfund Cost Recovery Procedures Manual, September 1994.

As discussed in the aforementioned guidance documents, each cost element (such as contract costs, payroll costs, travel costs and indirect costs) should be supported by the types of documentation discussed therein. I have considered these guidance documents in developing the lists of necessary supporting documents discussed in this report.

For example in EPA's Cost Recovery Procedures Manual contains the following discussion with respect to travel costs:

"Documentation of travel costs includes the travel authorization, the travel voucher, common carrier bills, and proof of payment. Travel authorizations show the purpose of the travel and that the travel was approved; signatures therefore are necessary, as well as dates of travel and the name or account number of the site."[11]

The Procedures Manual includes similar discussions concerning each of the other types of costs incurred.

As another example, the Miami Dade Aviation Department's Manual contains the following with respect to documentation and cost recovery for contract costs:

"Contractors must, at a minimum, prepare, maintain and provide to MDAD the following types of information and documentation in connection with each response activity:

- response action reports as required by regulatory agencies;

- monthly status reports on response activities

- comprehensive field notes

---

[11] Superfund Cost Recovery Procedures Manual, U. S Environmental Protection Agency, September 1994, Page 6-1.

8

- daily employee timesheets which clearly document the tasks being performed and the associated with such tasks;

- invoices with detailed work descriptions which clearly document the activities performed, the locations where the activities were performed, and the costs associated therewith;

- contracts, subcontracts, work orders and approvals for extra work;

- checks issued and receipts obtained in connection with the purchase or lease of equipment, materials, supplies, etc.; and

- correspondence files.

Copies of all such documentation (with the exception of correspondence files) must be provided to MDAD, shall become part of the public records, and may be used as evidence in the cost recovery actions."[12]

My experience in over one hundred Superfund cost recovery cases, including cost recovery claims by the Government and those submitted by PRP's for reimbursement against the Superfund, has been that transactions which are not sufficiently supported by contemporaneous source documents (e.g. timesheets, travel vouchers, and contract invoices) are not accurately accounted for and therefore, should not be reimbursed.

---

[12] Guide to Compliance with the National Contingency Plan at Miami International Airport, Prepared by Compliance Manual Subcommittee, Environmental Cleanup and Cost Recovery Program, Miami-Dade Aviation Department.

## **Conclusion**

This report and my opinions are based upon the documents and information reviewed to date. My review of the large volumes of discovery materials is continuing.

This report and my opinions are subject to revision and supplementation based on additional documents and information not yet reviewed or not yet provided, and the testimony to be provided, through the time of trial.

I reserve the right to submit a supplemental report after I have had a reasonable opportunity to analyze the supporting cost documentation and future cost information to be organized and provided by Plaintiff.

10

# WILEY R. WRIGHT, III
## Personal Resume

Mr. Wright is a CPA and shareholder/partner in the certified public accounting firm of Rubino & McGeehin, Chartered. He provides services to a wide variety of clients, in addition to litigation support, expert testimony and related consulting activities.

As part of providing litigation support, expert testimony and consulting services, Mr. Wright is extensively involved with construction and government contracting disputes. Mr. Wright provides these services to law firms, construction and government contractors, as well as public and private owners. This experience involves a wide variety of projects, including but not limited to, highways, bridges and tunnels, dams, power plants/facilities, airports, prisons, hospitals manufacturing facilities, numerous other commercial and industrial buildings, satellite design and production programs, aircraft and ship programs, and defense weapons programs.

Representative Construction Projects include, but are not limited to, the following:

| Project | Contractor |
|---|---|
| Condominium Building, Virginia Beach, VA | Turner Construction Company |
| James River (VA) Bridge | S.J. Groves / Kiewit |
| Military Housing Units in Cuba | Zublin / Delaware, Inc. |
| Various Highway Projects | The Driggs Corporation |
| Pittsburgh International Airport | ANJO Construction |
| Virginia State Prison | W.M. Jordan, Inc. |
| Los Angeles County Sludge Dehydration/Energy/Recovery System | Brinderson Corporation |
| Condominium Project | Gilbane Building, Inc. |
| Pennsylvania Highway Projects | J.M. Morrissey, Inc. |
| Natural Gas Pipeline | Conoco, Inc. |
| California Bridge Retrofit | J. MeeksConstruction |
| New Brunswick Power Plant | Noell, Inc. |
| Los Angeles Emergency Operations Center | Dillingham, Inc. |
| Robert Byrd Dam | Noell, Inc. |
| Veterans Administration Hospital | Clarke Construction |
| Office Building Complex | Turner Construction Company |
| Alameda Corridor Project | Burlington Northern Railroad |
| Military Housing Units in Alaska | Kieiwt Construction Co. |
| Fiber Optics Contract | Bechtel and LMAC Inc. |
| Veterans Administration Hospital | Hoffman Construction Co. |

With respect to construction and government contract services, Mr. Wright provides the following:

- claim preparation, review and analysis (certified claims, requests for equitable adjustments and termination claims for conveyance and default);
- change order costing and documentation reviews;
- interim and final project cost audits;
- contract administration consulting;
- accounting system design and reviews;
- Cost Accounting Standards and Federal Acquisition Regulations consulting;
- cost allowability and allocability determinations;
- defective pricing reviews;
- fraud investigations; and
- False Claims *(Qui Tam)* reviews and analysis.

In addition to construction and government contract related services Mr. Wright provides expert testimony in environmental cost recovery and natural resource damage actions being prosecuted by the U.S. Department of Justice. As part of these efforts, he provides consultations to various government agencies (e.g., the U.S. Department of Justice, the U.S. Environmental Protection Agency, U.S. Department of Interior, the U.S. Department of Commerce and various States) and private entities on a variety of cost accounting and financial matters. Mr. Wright has provided these services in over one hundred environmental cases, most of which involve construction and government contracting activities and related issues. As part of these responsibilities Mr. Wright provides the following services:

- prepares or analyzes damage claims;
- identifies costs that are inconsistent with the NCP;
- reviews corporate records relating to fraudulent conveyances;
- assists in "piercing the corporate veil" analysis;
- assesses the adequacy of accounting systems and records of governmental units and private parties;
- develops direct and indirect cost systems and methodologies;
- performs determinations of ability to pay;
- performs or analyzes allocations of costs to operable units, sub-sites or potentially responsible parties;
- assists in negotiation of disputes; and
- and provides expert testimony on specific financial and cost accounting issues.

## WILEY R. WRIGHT, III
### Personal Resume

Mr. Wright has been qualified and has provided expert testimony in construction and government contract litigation as well as cost recovery actions under CERCLA and has testified in Federal and State Courts as well as in Arbitration and Mediation and before the NASA Board of Contract Appeals and the Armed Services Board of Contract Appeals.

Prior to joining the Firm, Mr. Wright was employed as an audit manager with a large local public accounting firm. As an audit manager with his prior firm, he had responsibility for the firm's audit and consulting services to government and construction contractors and a large financial institution. These responsibilities included performing and supervising audits; financial statement presentation; internal control reviews; and interaction with regulatory agency auditors.

Mr. Wright has co-authored an article published in the Maryland Society of Certified Public Accountants' *CPA Statement* entitled "Professional Standards Applicable to Litigation Support." Mr. Wright has also taught continuing professional education courses on construction damages.

### WILEY R. WRIGHT, III
**Personal Resume**

## EDUCATION

- °     BS Accounting, George Mason University
- °     Specialized Training

## PROFESSIONAL CERTIFICATION

- °     Certified Public Accountant

## RELEVANT EXPERIENCE

- °     Partner, Public Accounting Practice & Management Consultant
- °     Expert Testimony and Litigation Support Services
- °     Audits of Construction and Government Contractors
- °     Consulting Services/Construction and Government Contractors

## PROFESSIONAL AFFILIATIONS/MEMBERSHIPS

- °     American Institute of Certified Public Accountants
- °     National Contract Management Association
- °     Construction Financial Management Association
- °     Institute of Management Accountants

### WILEY R. WRIGHT, III
**Personal Resume**

**Listing of Expert Testimony**
*Italics* indicates client.

| Plaintiff | Defendant | Forum |
|---|---|---|
| *United States of America* | Charles George Trucking Co., <u>et al</u>. | United States District Court for the District of Massachusetts |
| AWM Enterprises, Inc. | *Noell, Inc.* | Fairfax County, VA, Circuit Court |
| *United States of America* | Scott's Liquid Gold | United States District Court, Colorado |
| *United States of America* | Broderick Investment Company Tom H. Connolly, as Trustee; and Burlington Northern Railroad Company | United States District Court for the District of Colorado |
| *United States of America* | Atlantic Richfield Company | Alternative Dispute Resolution |
| *United States of America* | Atlantic Richfield Company | United States District Court for the Eastern District of Texas |
| *Aerojet-General Corp.* | United States Air Force | Armed Services Board of Contract Appeals |
| *United States of America* | Salvors, Inc., <u>et al</u> | United States District Court, Florida |
| *Noell, Inc.* | Los Angeles Department of Water and Power | Superior Court of California |

## WILEY R. WRIGHT, III
### Personal Resume

### Listing of Expert Testimony
*Italics* indicates client.

| Plaintiff | Defendant | Forum |
|---|---|---|
| W.R. Mollohan, Inc., <u>et al</u> | Fru-Con Construction Corporation, et al | United States District Court, West Virginia |
| *United States of America* | Findett Corporation | United States District Court, Missouri |
| *United States of America* | DICO, Inc. | United States District Court, Missouri |
| Golden Bay Fence Co. | *Ray Wilson Co.* | Superior Court of California/ American Arbitration Association |
| Joe Amaral Mechanical | *Clarke Construction* | United States District Court, Northern District of California |
| *Dillingham Construction* | County of Los Angeles | Superior Court of California |
| *United States of America* | ASARCO, Inc. | United States District Court, Idaho |
| *United States of America* | Montrose Chemical Co. | United States District - California |

# WILEY R. WRIGHT, III
## Personal Resume

### Listing of Expert Testimony
*Italics* indicates client.

| Plaintiff | Defendant | Forum |
|---|---|---|
| *United States of America and The State of Colorado* | Robert M. Friedland, et al. | United States District Court, District of Colorado |
| *United States of America* | Chrysler Corporation, Ford Motor Company, et al. | United States District Court, Northern District Of Ohio |
| E.I. Dupont | *United States of America* | United States District Court, New Jersey |
| *United States of America* | Tug ALLIE B, et al. | United States District Court, Southern District Of Florida |
| *United States of America* | Sprague Energy, et al. | United States District Court, North Carolina |
| Kiewit Construction | *United States of America* | United States Court Of Federal Claims |
| *United States of America* | W.R. Grace, et al | United States District Court, Montana |

## Primary Documents Considered

1996 Opinion of Cost – Law Engineering.

1997 Opinion of Cost – Law Engineering.

1998 Opinion of Cost – Law Engineering.

1999 Opinion of Cost – Law Engineering.

2000 Opinion of Cost – Law Engineering.

Selected Service Orders.

Selected Invoices.

Financial Management of the Superfund Program, Resources Management Directives System 2550D, June 25, 1988.

Superfund Cost Recovery Procedures Manual, September 1994.

1998 Florida Dept. of Environmental Protection and Miami-Dade County, Consent Order and Settlement Agreement, in OGC File No. 94-0984.

June 13, 1988 WASA Cooperative Agreement Application for Federal Assistance, Application No. FL 8605271359C, re the Hialeah Water Treatment Plant and the John E. Preston Water Treatment Plant.  AA0439012-53.

August 31, 1992 letter from DCAD's Richard P. Raymond to Vivek Kamath, Waste Program Administrator, Florida Dept. of Environmental Regulation.  AA0122911-15.

December 6, 1993 Telephone Contact Summary by Paul F. Moisan, B&V Waste Science and Technology Corp. re conversation with Paul Wierzbicki, Florida Dept. Of Environmental Protection.  MA001677EPA.

April 23, 1996 memorandum from Victoria Fox to all environmental engineering staff. LE027736-39.

1989 HNTB "Port Authority Properties" Annual Report (DCAD203864-3913).

DCAD 1991 Annual Report (DCAD204054-4092).

1992 HNTB "Aviation Facilities" Annual Report (DCAD204332-4376).

1993 HNTB "Aviation Facilities" Annual Report (DCAD204460-4510).

1994 HNTB "Port Authority Properties" Annual Report (DCAD204511-4592).

1994 DCAD Annual Report (DCAD204593-4641).

1995 HNTB "Port Authority Properties" Annual Report (DCAD204642-4727).

1996 DCAD Annual Report( DCAD204728-4785).

May 1986, EPA, Florida DER request for Superfund program assistance for the remedial design phase of the Miami Drum/Biscayne Aquifer, Dade County Cooperative Agreement #V004524-86-0.  MA001013EPA-MA001052EPA.

September 1986, Florida DER contract with Dade County in Contract No. HW72 re Miami Drum/Biscayne Aquifer Superfund Cleanup, Cooperative Agreement #V004524-86-0. MA000974EPA-MA001012EPA.

April 2001 Complaint.

May 2001 Complaint.

EPA, June 20, 2001 cost report sheets for Miami Drum, FL Site ID No. 04-37 (MA002120EPA-MA002247EPA).

EPA, June 26, 2001 "Narrative Cost Summary" for the "Varsol, FL, FL, FL  Site, ID No. 04 36." MA002080EPA-MA002101EPA.

Report of MIA Past Costs (Pre 8/15/00) Miami-Dade County v. Aviation Office of America et al., Case No. 96-23008 CA (04).  DD001056-1423.

1991 Order In re Ionosphere Club, Eastern Air Lines, Inc. et al., regarding a November 1991 settlement agreement with Dade County (United States Bankruptcy Court, SDNY).

1992 Settlement Stipulation and Order In re Pan American Corporation (United States Bankruptcy Court, SDNY).

2002 Settlement Agreement and Release between Miami-Dade County, TIG Insurance Co. and Virginia Surety Co.

2002 Settlement Agreement and Release between Miami-Dade County and Monarch Insurance Co.

2001 Confidential Settlement Agreement and Release between Miami-Dade County and London Market Insurers.

2002 Settlement Agreement and Release between Miami-Dade County and Utica Mutual
Insurance Co.

2001 Settlement Agreement and Release between Miami-Dade County and Associated
Aviation Underwriters, Inc.

LAWGIBB Group, Draft Process Document for Past Costs Reports, Prepared for:Miami-
Dade Aviation Department, Prepared By: Law Engineering and Environmental Services,
Inc. Wilmington, North Carolina, Law Project No. 40700-0-2229, December 5, 2001.

Annotated Report of MIA Past Costs (Pre 10/1/01), Miami-Dade County v. Aviation
Office of America et al., Case No. 96-23008 CA (04) Revised 4/12/02, Wednesday,
September 25, 2002.

Indictment in United States of America vs. Ricardo Mendez and Mirta Medez, filed
August 2, 2001.

Plea Agreement in the United States of America v. Ricardo Mendez, Defendant, filed
December 20, 2002.

Superceding Information in United States of America vs. Mirta Mendez, Defendant, filed
December 20, 2002.

Plea Agreement in United States of America v. Mirta Mendez, Defendant, filed
December 20, 2002.

Plea Agreement in United States of America v. Edwin L. Perkinson, Defendant, filed
February 6, 2001.

Transcript of Plea Colloquy Before The Honorable Donald Middlebrooks, United States
District Judge, in United States of America, Plaintiff vs. Edwin Perkinson, Defendant,
Miami, Florida, February 6, 2001.

Transcript of Sentencing Hearing Before The Honorable Donald Middlebrooks, United
States District Judge, in United States of America vs. Edwin L. Perkinson, Defendant,
Miami, Florida, April 7, 2002.

Information in United States of America vs. Marilyn J. Parker, Defendant, Filed July 31,
2001.

Plea Hearing Transcript before Adalberto Jordan, USDJ, in United States of America,
Plaintiff(s), v. Ricardo Mendez and Mirta Mendez, Defendant(s), December 20, 2002.

Guide to Compliance with the National Contingency Plan at Miami International Airport,
Prepared by Compliance Manual Subcommittee, Environmental Cleanup and Cost
Recovery Program, Miami-Dade Aviation Department.